613 A.2d 1227

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Ronald BUJANOWSKI, Sr. and Marvin Gorelick, Appellees.**

Superior Court of Pennsylvania.

Argued June 1, 1992.

Filed Aug. 7, 1992.

164

---

Christopher H. Asplen, Asst. Dist. Atty., Doylestown, for Com., appellant.

John Fagan, Asst. Public Defender, Doylestown, for Bujanowski, appellee.

Patrick J. Egan, Doylestown, for Gorelick, appellee.

Before ROWLEY, President Judge, and WIEAND, CIRILLO, OLSZEWSKI, MONTEMURO, POPOVICH, JOHNSON, HUDOCK and FORD ELLIOTT, JJ.

WIEAND, Judge:

█ This case is before a court en banc for reargument of a Commonwealth appeal from an order which granted a defense motion in limine to prevent the Commonwealth from using an extrajudicial statement by an unavailable witness as substantive evidence implicating Ronald Bujanowski, Sr. and Marvin Gorelick, appellees, in a series of burglaries committed in Bensalem Township, Bucks County.[1]

Ronald Bujanowski, Jr. was apprehended by Bensalem Township police in connection with three burglaries which had been committed in Bensalem Township during the month of August, 1989. He gave a statement to Detective Bruce Van Zant in which he admitted that he had participated in the burglaries and implicated his father, Ronald Bujanowski, Sr., in the commission of the three burglaries and Marvin Gorelick in the commission of one of the burglaries. Bujanowski, Sr. and Gorelick were thereafter arrested and charged with various offenses related to the three burglaries.[2] At the preliminary hearing, however, the younger Bujanowski recanted his prior statement to Detective Van Zant and testified that his father and Gorelick had had nothing to do with the burglaries. The Commonwealth was then permitted to introduce the statement which the younger Bujanowski had made to Van Zant, and on this basis the charges against Bujanowski, Sr. and Gorelick were returned to court.

When the Commonwealth subsequently attempted to subpoena Bujanowski, Jr. for trial, he could not be found. The

1. The Commonwealth has certified that the trial court's order, if allowed to stand, will substantially handicap its prosecution of the case. The appeal, therefore, is properly before the Court. See: *Commonwealth v. Cohen*, 529 Pa. 552, 605 A.2d 1212 (1992); *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985). See also: *Commonwealth v. Deans*, 530 Pa. 514, 517, 610 A.2d 32, 33–34 (1992).

2. Charges against Ronald Bujanowski, Jr. were disposed of in Juvenile Court.

parties have agreed and the trial court found as fact that he was unavailable for trial. The prosecutor proposed, therefore, to offer at trial the testimony given by Bujanowski, Jr. at the preliminary hearing. This testimony was exculpatory, and the prosecutor's sole purpose for offering the same was to provide a foundation for offering the witness's prior inconsistent statement to Detective Van Zant. The Commonwealth has conceded that it has no means by which it can prove participation by the appellee-defendants except by the statement made by Bujanowski, Jr. to Detective Van Zant and that its case will not survive a demurrer without such evidence. The trial court ruled that the statement could not be used as substantive evidence to implicate the defendant-appellees.

■ We agree with the Commonwealth that the testimony given by Bujanowski, Jr. at the preliminary hearing is admissible as the prior recorded testimony of an unavailable witness. See: *Commonwealth v. Sandutch,* 498 Pa. 536, 540, 449 A.2d 566, 567 (1982); *Commonwealth v. Scarborough,* 491 Pa. 300, 317, 421 A.2d 147, 155 (1980). This evidence, however, will not incriminate the defendant-appellees but will exculpate them. In reality, the Commonwealth is attempting to place before the jury as substantive evidence the extrajudicial statement made by Bujanowski, Jr. to Van Zant. It does so under the guise of attacking the credibility of the witness's prior testimony by showing an earlier inconsistent statement. This statement, however, is hearsay. We agree with the trial court that the witness's statement cannot be received as substantive evidence.

"Hearsay is an out-of-court statement offered to prove the truth of the matter asserted." *Commonwealth v. Darden,* 311 Pa.Super. 170, 175, 457 A.2d 549, 551 (1983). See also: *Commonwealth v. Glover,* 399 Pa.Super. 610, 614, 582 A.2d 1111, 1113 (1990); *Commonwealth v. Cohen,* 371 Pa.Super. 558, 564–565, 538 A.2d 582, 585 (1988), *appeal dismissed,* 488 U.S. 1035, 109 S.Ct. 858, 102 L.Ed.2d 983 (1989); *Commonwealth v. Cassidy,* 315 Pa.Super. 429, 433, 462 A.2d 270, 272 (1983).

When a statement is offered in evidence to prove the truth of a fact asserted therein, the speaker's credit and the circumstances of the utterance become basic to a proper evaluation of the statement. Therefore, the hearsay rule generally excludes such evidence unless the speaker is on hand to personally testify.

*Commonwealth v. DiSilvio*, 232 Pa.Super. 386, 391, 335 A.2d 785, 787–788 (1975). See: *Commonwealth v. Underwood*, 347 Pa.Super. 256, 259, 500 A.2d 820, 822 (1985) ("Hearsay is generally inadmissible as evidence because the competency and veracity of the original speaker are not subject to examination."). See also: *Commonwealth v. Thomas*, 372 Pa.Super. 349, 356, 539 A.2d 829, 833 (1988); *Commonwealth v. Whiting*, 358 Pa.Super. 465, 478, 517 A.2d 1327, 1334 (1986). "The rationale for the hearsay rule is that hearsay is too untrustworthy to be considered by the trier of fact." *Commonwealth v. Haber*, 351 Pa.Super. 79, 83, 505 A.2d 273, 275 (1986). Therefore, our Supreme Court "has long adhered to the principle that the use of hearsay evidence is to be discouraged, and [the] policy against its use is generally recognized as particularly strong." *Heddings v. Steele*, 514 Pa. 569, 574, 526 A.2d 349, 351 (1987) (footnote omitted).

It has been said that " '[t]he principle reason for excluding hearsay is the danger that the declarant's credibility cannot be assessed.' " *Commonwealth v. Sanders*, 260 Pa.Super. 358, 366, 394 A.2d 591, 595 (1978), quoting *Commonwealth v. Dugan*, 252 Pa.Super. 377, 386, 381 A.2d 967, 971 (1977) (Spaeth, J., concurring). In this regard, the Supreme Court has observed:

The predicate supporting the rejection of hearsay evidence is its assumed unreliability because the declarant from which the statement originates is not before the trier of fact and therefore cannot be challenged as to the accuracy of the information sought to be conveyed. *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *Stidum v. Trickey*, 881 F.2d 582 (8th Cir.1989); *Martinez v. Sullivan*, 881 F.2d 921 (10th Cir.1989); *United States v. Koskerides*, 877 F.2d 1129 (2d Cir.1989); *United States v. Bentley*, 875

F.2d 1114 (5th Cir.1989); *Commonwealth v. Galloway,* 476 Pa. 332, 382 A.2d 1196 (1978); *Commonwealth v. Porter,* 449 Pa. 153, 295 A.2d 311 (1972); *Commonwealth v. Ransom,* 446 Pa. 457, 288 A.2d 762 (1972). It also offends an essential concept of this nation that an accused has a fundamental right to confront his accuser. *Dutton v. Evans, supra; Commonwealth v. Galloway, supra; Ransom, supra.*

*Commonwealth v. Smith,* 523 Pa. 577, 592–593, 568 A.2d 600, 608 (1989). The Supreme Court has elaborated further as follows:

A hearsay statement lacks guarantees of trustworthiness fundamental to the Anglo–American system of jurisprudence. Perhaps such a statement's most telling deficiency is it cannot be tested by cross-examination. According to Dean Wigmore, cross-examination is "beyond any doubt the greatest legal engine ever invented for the discovery of truth." 5 Wigmore, *supra,* § 1367. Nor is the declarant under oath when the out-of-court statement is uttered. This court has long recognized the oath requirement as a further assurance of reliability. *Commonwealth v. Stewart,* 1 Serg. & Rawle 342, 344 (1815); *Longenecker v. Hyde,* 6 Binn. 1, 2 (1813). Out-of-court declarations also deprive the trier of fact of an opportunity to examine the demeanor of the declarant. *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 495–496, 71 S.Ct. 456, 468, 95 L.Ed. 456 (1951). Moreover, an in-court declarant may be impressed with the solemnity of the proceeding and may be reluctant to lie in the face of the party against whom the statement is directed. Fed.R.Evid. Art. VIII, Hearsay, "Introductory Note: The Hearsay Problem," advisory committee's note, *reprinted in* 56 F.R.D. 183, 288 (1973). The confrontation clauses of the federal and state constitutions, U.S. Const. amend. VI; Pa. Const. art. I, § 9, are manifestations of these beliefs and attitudes.

*Heddings v. Steele, supra,* 514 Pa. at 573, 526 A.2d at 351. Perhaps the most eloquent explanation of the rationale under-

lying the hearsay rule was that provided by Justice Musmanno, who said:

The primary object of a trial in our American courts is to bring to the tribunal, which is passing on the dispute involved, those persons who know of their own knowledge the facts to which they testify. If it were not for this absolute **sine qua non,** trials could be conducted on paper without the presence of a single flesh and blood witness. However, with such a pen-and-ink procedure, there would be no opportunity to check on testimonial defects such as fallacious memory, limited observation, purposeful distortions, and outright fabrication. The great engine of cross-examination would lie unused while error and perjury would travel untrammeledly to an unreliable and often-tainted judgment. Accordingly, nothing is more adamantly established in our trial procedure than that no one may testify to what somebody else told him. He may only relate what is within the sphere of his own memory brought to him by the couriers of his own senses.

*Johnson v. Peoples Cab Co.,* 386 Pa. 513, 514–515, 126 A.2d 720, 721 (1956). See also: *Semieraro v. Commonwealth Utility Equipment Corp.,* 518 Pa. 454, 457–458, 544 A.2d 46, 47 (1988); *Heddings v. Steele, supra* at 574, 526 A.2d at 351–352.

Because hearsay is regarded as unreliable, "[i]t is well settled in our law that hearsay evidence is inadmissible unless it qualifies under one of the recognized exceptions to that rule." *Commonwealth v. Smith, supra* at 591, 568 A.2d at 607. See also: *Commonwealth v. Wright,* 455 Pa. 480, 484–485, 317 A.2d 271, 273 (1974); *Commonwealth v. Franklin,* 397 Pa.Super. 265, 277, 580 A.2d 25, 31 (1990). "Exceptions to the hearsay rule have been fashioned to accommodate certain classes of hearsay that are substantially more trustworthy than hearsay in general, and thus merit exception to the hearsay rule." *Commonwealth v. Haber, supra* at 83, 505 A.2d at 275.

Therefore, in order for [hearsay] testimony to be properly admitted in evidence, the proponent of such testimony must point to some exception to the hearsay rule which would

justify the court in departing from the traditional notion that a party should not be deprived of the guaranty of truthfulness resulting from the oath of the declarant and the opportunity to cross-examine the declarant in order to test the accuracy of the observations upon which it was based.

*Carney v. Pennsylvania Railroad Co.,* 428 Pa. 489, 493, 240 A.2d 71, 73 (1968). See: *Heddings v. Steele, supra* at 574, 526 A.2d at 352 ("To insure a party the guarantees of trustworthiness resulting from a declarant's presence in court, a proponent of hearsay evidence must point to a reliable hearsay exception before such testimony will be admitted.").

In the instant case, the Commonwealth asserts that the hearsay statement of Ronald Bujanowski, Jr. is admissible as substantive evidence under the Supreme Court's holding in *Commonwealth v. Brady,* 510 Pa. 123, 507 A.2d 66 (1986). In *Brady,* the Court held that prior inconsistent statements of a non-party witness "may be used as substantive evidence *where the declarant is a witness at trial and available for cross-examination." Id.* 510 Pa. at 125, 507 A.2d at 67 (emphasis added). By the express terms of the Court's holding, *Brady* makes the presence of the declarant at trial an indispensable prerequisite to the admission of a prior inconsistent statement as substantive evidence. The Court's analysis leaves no doubt that it is the declarant's presence in court and availability for cross-examination which lend a sufficient degree of reliability to allow a prior inconsistent statement to be heard by the jury as substantive evidence. Thus, the *Brady* Court said:

The simple fact is that "the usual dangers of hearsay are largely nonexistent where the witness testifies at trial." *California v. Green, supra* at 399 U.S. 155, 90 S.Ct. at 1933. By hypothesis in these situations, the out-of-court declarant is now a witness in-court where he or she is placed under oath, subject to cross-examination and under observation by the finder of fact. . . . Indeed, the cross-examination to which a recanting witness is subjected will likely be meaningful and vigorous since the witness is already "on the spot" in having to explain the discrepancies between earlier

statements and direct testimony, or deny that the earlier statements were made at all.

. . . .

The availability of cross-examination at trial also assures a meaningful opportunity for the trier of fact to observe the declarant who has been called upon and sworn as a witness and questioned as to the discrepancy between the prior statement and the direct testimony. The trier of fact may bring to bear his or her sensory observations, experience, common sense and logic upon the witness to assess credibility and to determine the truth and accuracy of both the out-of-court declarations and the in-court testimony.

*Id.,* 510 Pa. at 128–129, 507 A.2d at 69. "Thus the important components of the *Brady* rule are that otherwise admissible prior inconsistent statements be given under highly reliable circumstances and *the non-party declarant be subject to cross-examination in the proceeding where the prior statement is to be admitted." Commonwealth v. Lively,* 530 Pa. 464, 469, 610 A.2d 7, 9–10 (1992) (emphasis added).[3]

The Commonwealth's further reliance upon the decision of a panel of the Superior Court in *Commonwealth v. Smith,* 380 Pa.Super. 619, 625-627, 552 A.2d 1053, 1056–1057 (1988), is seriously misplaced. *Smith* has no application to the circumstances of the instant case. A prior inconsistent statement by a non-testifying witness in that case was received solely for

---

**3.** The trial court in the instant case astutely recognized the necessity for the presence of the declarant in court to allow a prior inconsistent statement to be admitted under *Commonwealth v. Brady.* The trial court reasoned as follows:

> In the instant matter, the Commonwealth was proposing to offer as substantive evidence an out-of-court admission made to a detective by a witness who was *not* going to be available to the finder of fact and whose whereabouts were unknown. The Commonwealth proposed to do so by having the witness' prior recorded testimony read into the record to form the basis for the out-of-court statement. This procedure has none of the safe guards referred to and relied upon by the Supreme Court in *Brady* and clearly is not covered by that court's holding therein. Without the opportunity to cross-examine Bujanowski, Jr. at trial, his prior statements to Detective Van Zant are therefore inadmissible.

Trial Court Opinion at 4–5.

impeachment purposes, and the trial court specifically instructed the jury that the prior inconsistent statement could not be considered "as proof of the matter asserted in the statement." *Id.*, 380 Pa.Superior Ct. at 627, 552 A.2d at 1057. It is not a logical and safe extension of the *Smith* holding to allow a jury to consider Bujanowski, Jr.'s prior inconsistent statement as substantive evidence.

The fact that the Commonwealth in all likelihood will not be able to establish participation in the burglaries by the defendant-appellees without using the extrajudicial statement made by Bujanowski, Jr. is an inadequate reason for jettisoning the safeguards of the hearsay exclusion. As the Superior Court has observed:

Evidentiary rules, including the hearsay rule, have a **raison d'etre.** Experience has taught us that trials conducted in accordance with such rules increase the likelihood of a fair and just resolution of the issues by the trier of fact. Otherwise, we would jettison the lot of them.

It is true, of course, that permitting the Commonwealth to introduce the out-of-court assertions ... against the defendant ... would make it easier to convict the guilty. Unfortunately, it would also make it easier to convict the innocent. If such a trade-off is acceptable, why not suspend the hearsay rule entirely when the Commonwealth introduces evidence in a criminal case? More defendants, guilty and innocent alike, would undoubtedly be convicted. The same result would obtain if we allowed the Commonwealth to introduce coerced confessions.

However, such a trade-off is not acceptable. It is a fundamental precept of law in Pennsylvania that one charged with crime, be it murder, child abuse, or keeping a public nuisance, comes to trial clothed in the presumption of innocence. If we bear this in mind, we will be less tempted to distort the law of evidence in favor of the Commonwealth in order to increase the conviction rate. The Commonwealth should be bound by the same rules of evidence, including the hearsay rule, as other litigants.

*Commonwealth v. Haber, supra* 351 Pa.Super. at 83–84, 505 A.2d at 276. The same concerns were expressed by the Supreme Court in the following manner:

Whether or not there is evidence that strongly suggests a finding of guilt, it is the responsibility of the Commonwealth to prove that conduct by legally sufficient evidence. Lest we, as a society, be accused of being barbaric, we must objectively test compliance with our standards before imposing such a penalty. Regardless of personal predelictions (sic), the law must strictly adhere to these fundamental precepts in the decision-making process.

*Commonwealth v. Smith, supra* 523 Pa. at 596, 568 A.2d at 610. See also: *Commonwealth ex rel. Buchanan v. Verbonitz,* 525 Pa. 413, 581 A.2d 172 (1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1108, 113 L.Ed.2d 217 (1991) (Commonwealth cannot establish prima facie case at preliminary hearing by hearsay evidence alone).

 The prior inconsistent statement of Ronald Bujanowski, Jr. in the instant case does not qualify as admissible substantive evidence under *Commonwealth v. Brady, supra,* because the declarant will not be present in court and available for cross-examination. The Commonwealth has not contended, and, indeed, cannot contend, that the statement is admissible as substantive evidence under any other recognized exception to the hearsay rule. It seems abundantly clear, therefore, that the introduction of the extrajudicial statement of Bujanowski, Jr. is barred by the hearsay exclusion.

The Supreme Court has recently placed additional restrictions upon the use of prior inconsistent statements as substantive evidence. Thus, in *Commonwealth v. Lively, supra,* the Court held:

[A] prior inconsistent statement may be used as substantive evidence only when the statement is given under oath at a formal legal proceeding; or the statement had been reduced to a writing signed and adopted by the witness; or a statement that is a contemporaneous verbatim recording of the witness's statements.

*Id.*, 530 Pa. at 471, 610 A.2d at 10. See also: *Commonwealth v. Burgos,* 530 Pa. 473, 479, 610 A.2d 11, 14 (1992). In the instant case, the prior statement given by Bujanowski, Jr. to Detective Van Sant was not given under oath in a legal proceeding, and there is no evidence in the record to suggest that the statement was either contemporaneously recorded or reduced to writing and signed by Bujanowski. For this reason also, the statement would not be admissible as substantive evidence.

■ If this Court were to allow the hearsay statement of Ronald Bujanowski, Jr. to be used as substantive evidence, we would thereby sanction a clear violation of appellees' constitutional right to confront and cross-examine their accuser, as guaranteed by the Sixth Amendment to the Constitution of the United States. See: *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *Commonwealth v. Ransom,* 446 Pa. 457, 288 A.2d 762 (1972). See also: *Commonwealth v. Crosland,* 397 Pa.Super. 622, 626–628, 580 A.2d 804, 806–807 (1990); *Commonwealth v. Sanford,* 397 Pa.Super. 581, 588, 580 A.2d 784, 787–788 (1990); *Commonwealth v. Kravontka,* 384 Pa.Super. 346, 351–354, 558 A.2d 865, 867–869 (1989). The relationship between the hearsay rule and the Confrontation Clause was discussed by the United States Supreme Court in *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), as follows:

Although we have recognized that hearsay rules and the Confrontation Clause are generally designed to protect similar values, we have also been careful not to equate the Confrontation Clause's prohibitions with the general rule prohibiting the admission of hearsay statements. See *California v. Green,* 399 U.S. 149, 155–156, 90 S.Ct. 1930, 1933–1934, 26 L.Ed.2d 489 (1970); *Dutton v. Evans,* 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213 (1970) (plurality opinion); *United States v. Inadi,* 475 U.S. 387, 393, n 5, 106 S.Ct. 1121, 1125, n 5, 89 L.Ed.2d 390 (1986). The Confrontation Clause, in other words, bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule. See, *e.g., Green, supra,* 399

U.S., at 155–156, 90 S.Ct., at 1933–1934; *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Pointer v. Texas, supra.* [380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923.]

In *Ohio v. Roberts,* we set forth "a general approach" for determining when incriminating statements admissible under an exception to the hearsay rule also meet the requirements of the Confrontation Clause. 448 U.S., at 65, 100 S.Ct., at 2538. We noted that the Confrontation Clause "operates in two separate ways to restrict the range of admissible hearsay." *Ibid.* "First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case . . ., the prosecution must either produce or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." *Ibid.* (citations omitted). Second, once a witness is shown to be unavailable, "his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Id.,* at 66, 100 S.Ct., at 2539 (footnote omitted); see also *Mancusi v. Stubbs,* 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972).

*Id.* at 810, 110 S.Ct. at 3146, 111 L.Ed.2d at 651–652.

■ When the prosecution seeks to introduce hearsay evidence which is not admissible under any firmly rooted exception to the hearsay rule, it bears the burden of proving that such evidence has sufficient indicia of reliability to withstand scrutiny under the Confrontation Clause. *Idaho v. Wright, supra.* To meet this burden, the prosecution must demonstrate " 'particularized guarantees of trustworthiness' " which are "drawn from the totality of circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." *Id.* at 821, 110 S.Ct. at 3149, 111 L.Ed.2d at 655–656. "Thus, unless an affirmative reason,

arising from the circumstances in which the statement was made, provides a basis for rebutting the presumption that a hearsay statement is not worthy of reliance at trial, the Confrontation Clause requires exclusion of the out-of-court statement." *Id.* at 821, 110 S.Ct. at 3150, 111 L.Ed.2d at 656.

In *Lee v. Illinois,* 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), the United States Supreme Court considered whether the Confrontation Clause had been violated by the use, as substantive evidence, of an out-of-court confession of an accomplice which had implicated the defendant. The Court found that the confession had been improperly admitted as evidence and held that, absent a showing of "sufficient 'indicia of reliability' " to overcome the strong presumption against the admission of uncross-examined hearsay, "there is no occasion to depart from the time-honored teaching that a co-defendant's confession inculpating the accused is inherently unreliable, and that convictions supported by such evidence violate the constitutional right of confrontation." *Id.* at 546, 106 S.Ct. at 2065, 90 L.Ed.2d at 529–530 (footnote omitted). The Court stressed the inherent unreliability of and the specific dangers presented by the particular type of hearsay evidence which, the Commonwealth argues, should be admitted in this case. The Supreme Court said:

> Our cases recognize that this truthfinding function of the Confrontation Clause is uniquely threatened when an accomplice's confession is sought to be introduced against a criminal defendant without the benefit of cross-examination. As has been noted, such a confession "is hearsay, subject to all the dangers of inaccuracy which characterize hearsay generally. ... More than this, however, the arrest statements of a codefendant have traditionally been viewed with special suspicion. Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence." *Bruton v. United States,* 391 U.S., at 141, 88 S.Ct., at 1631 (White, J., dissenting) (citations omitted).

Thus, in *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), we reversed a conviction because a confession purportedly made by the defendant's accomplice was read to the jury by the prosecutor. Because the accomplice in that case, while called to the witness stand, invoked his privilege against self-incrimination and refused to answer questions put to him, we held that the defendant's "inability to cross-examine [the accomplice] as to the alleged confession plainly denied him the right of cross-examination secured by the Confrontation Clause." *Id.,* at 419, 85 S.Ct., at 1077. This holding, on which the Court was unanimously agreed, was premised on the basic understanding that when one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect and must be subjected to the scrutiny of cross-examination.

Over the years since *Douglas, the Court has spoken with one voice in declaring presumptively unreliable accomplices' confessions that incriminate defendants.* Even Justice Harlan, who was generally averse to what he regarded as an expansive reading of the confrontation right, stated that he "would be prepared to hold as a matter of due process that a confession of an accomplice resulting from formal police interrogation cannot be introduced as evidence of the guilt of an accused, absent some circumstance indicating authorization or adoption." *Dutton v. Evans,* 400 U.S. 74, 98, 91 S.Ct. 210, 224, 27 L.Ed.2d 213 (1970) (concurring in judgment).

Our ruling in *Bruton* illustrates the extent of the Court's concern that the admission of this type of evidence will distort the truthfinding process. In *Bruton,* we held that the Confrontation Clause rights of the petitioner were violated when his codefendant's confession was admitted at their joint trial, despite the fact that the judge in that case had carefully instructed the jury that the confession was admissible only against the codefendant. We based our decision in *Bruton* on the fact that a confession that incriminates an accomplice is so "inevitably suspect" and "devastat-

ing" that the ordinarily sound assumption that a jury will be able to follow faithfully its instructions could not be applied. *Bruton, supra,* 391 U.S., at 136, 88 S.Ct., at 1628.

*Id.* at 541–542, 106 S.Ct. at 2062–2063, 90 L.Ed.2d at 526–527 (emphasis added).

The Supreme Court's decisions in *Wright* and *Lee* are controlling of the case now before this Court. The Commonwealth failed to demonstrate any "particularized guarantees of trustworthiness" with respect to the hearsay statement of Ronald Bujanowski, Jr. Indeed, the fact that the declarant promptly recanted his statement when testifying under oath at the preliminary hearing magnifies the inherently unreliable nature of the statement. To allow his statement to be admitted as substantive evidence, as the Commonwealth urges, would not only violate the hearsay rule of evidence but would deny to appellees their constitutional right to confront and cross-examine the only witness who has identified them as participants in the burglaries for which they are to be tried. Therefore, the decision of the trial court to exclude the statement as substantive evidence was correct and must be affirmed.

Order affirmed.

POPOVICH, J., concurs in the result.