633 A.2d 641

**COMMONWEALTH of Pennsylvania**

v.

**Hubert BALLARD, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 16, 1993.

Filed Nov. 8, 1993.

110

James G. Stock, Public Defender, Pittsburgh, for appellant.

Kemal A. Mericli, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before OLSZEWSKI, DEL SOLE and JOHNSON, JJ.

DEL SOLE, Judge:

In this appeal we are asked to determine whether the trial court erred in admitting certain testimony into evidence at trial. This testimony by a police officer included a detailed statement made by Appellant's co-defendant, whose trial had been severed from Appellant's and who had exercised his Fifth Amendment right not to testify at Appellant's trial. We find that such testimony, which directly inculpated Appellant, was improperly admitted and that because such error was not harmless, reversal and remand for a new trial are required.

The facts underlying the conviction of Appellant, Hubert Ballard, are as follows: In the early morning hours of October 7, 1990, the burning body of the victim, Marvin Fuller, was discovered in a remote section of Pittsburgh. The police determined that the victim had been stabbed to death and his corpse dumped over a hillside and set on fire with gasoline. Further investigation revealed that he had been living at 5439 Penn Avenue in the Garfield Section of Pittsburgh, along with Rocky Mitchell, Mitchell's niece Melony Ford, and Vincent Delacerna. Appellant and Ms. Ford's sister Camille lived nearby in another apartment.

On the evening of October 6, 1990, Appellant and Camille Ford were visiting Delacerna and Melony Ford in their Penn

Avenue apartment. The two couples drank, watched television and conversed with each other until around 3:30 a.m., when the victim returned home without his key and began banging on the window. Appellant and Delacerna then argued with the victim, who retired to his bedroom. Later, after some discussion concerning the victim, Appellant and Delacerna entered his bedroom and Fuller was stabbed to death. The body was contained in a garbage bag and put in the trunk of Appellant's car. Together with the two women, Ballard and Delacerna drove to a gas station where they purchased gas and had to place a deposit on the container. They then drove to a remote area, dumped the body, drenched it with gasoline and set it on fire. Hours later when interviewed by the police, Appellant and Delacerna made several different statements; Appellant denied his involvement in the plan to kill the victim, claiming that he had only been trying to intervene in an altercation between the victim and Delacerna.

Appellant was charged with Criminal Homicide, Criminal Conspiracy, Hindering Apprehension or Prosecution, Abuse of Corpse, Theft and Receiving Stolen Property. Counsel for Appellant filed an Omnibus Pre-trial Motion claiming that severance from co-defendants Delacerna and Melony Ford was necessary for a fair trial, that the weight of the evidence established that Appellant had not conspired to kill the victim, and that Appellant had not hindered the apprehension of co-defendant Delacerna. Following argument on the motion, the trial court granted the Motion to Sever and amended the Criminal Conspiracy charge to read that Appellant had conspired with Delacerna and had committed the overt acts of discussing and participating in the stabbing of the victim.

Appellant pled guilty to Hindering Apprehension or Prosecution, Abuse of a Corpse and Receiving Stolen Property. The Commonwealth moved for dismissal of the charge of Theft, which was granted. Prior to trial on the remaining charges, the Commonwealth filed a Motion in Limine, seeking the exclusion of the testimony of defense witness Bonnie Vilsack, but subsequently withdrew the motion.

At Appellant's jury trial, defense witness Bonnie Vilsack testified that while she was employed as a nurse at the Allegheny County Jail, she had to draw blood from a group of inmates which included Appellant and Delacerna. While attending to Delacerna, Ms. Vilsack asked him what his charges were and he responded, "Homicide." Ms. Vilsack then asked, "Well, did you do it?" and Delacerna replied, "Yes."

In the alternative to its Motion in Limine, the Commonwealth had argued that if Ms. Vilsack's testimony was admissible, it should be allowed to present, as rebuttal, the statement given by Delacerna to Detective Paul Marraway of the Pittsburgh Police. In this statement, Delacerna denies killing the victim and implicates Appellant as the one who planned the murder and ultimately stabbed the victim. Over defense objection, the trial court ruled that if the defense presented the testimony of Ms. Vilsack, it would allow the Commonwealth to admit Delacerna's statement to the police in rebuttal. Thus, after Ms. Vilsack testified, Detective Marraway testified concerning Delacerna's statement which inculpated Appellant. Defense counsel renewed his objection and moved for a mistrial, and the trial court denied both motions. The jury found Appellant guilty of Voluntary Manslaughter and not guilty of Criminal Conspiracy. Appellant's counsel thereafter filed a Motion for New Trial and/or in Arrest of Judgment, arguing that the trial court erred in denying Appellant's Motion in Limine, and in admitting Delacerna's statement into evidence. The motion was denied, and Appellant was sentenced to four to eight years imprisonment for his conviction of Voluntary Manslaughter and a consecutive period of twelve to twenty-four months for his guilty plea to Abuse of a Corpse. This appeal followed.

Appellant argues that the trial court erred in allowing the detective to recount Delacerna's statement which implicated Appellant, and that the court further erred in denying Appellant's motion for a mistrial following the admission of that statement; that Appellant's conviction of Voluntary Manslaughter was against the weight and sufficiency of the evidence, and that trial counsel was ineffective for failing to

preserve these issues for appellate review; and that the trial court erred in sentencing Appellant in the aggravated range when it failed to state on the record adequate reasons for such sentence, and that trial counsel was ineffective for failing to preserve this issue for appellate review.

In regard to Appellant's first claim on appeal, the trial court classified both Delacerna's statement to Ms. Vilsack and Delacerna's statement to Detective Marraway as hearsay statements, but ruled that they were admissible under the hearsay exception for statements against penal interest. We disagree with the trial court's classification of Delacerna's statement to Detective Marraway as hearsay. A "hearsay" statement is an out-of-court statement offered in court to prove the truth of the matter asserted. *Commonwealth v. Underwood,* 347 Pa.Super. 256, 259, 500 A.2d 820, 822 (1985). Because hearsay is regarded as unreliable, "[i]t is well settled in our law that hearsay evidence is inadmissible unless it qualifies under one of the recognized exceptions to that rule." *Commonwealth v. Bujanowski,* 418 Pa.Super. 163, 169, 613 A.2d 1227, 1230 (1992), quoting *Commonwealth v. Smith,* 523 Pa. 577, 591, 568 A.2d 600, 607 (1989). Statements against penal interest are admissible as exceptions to the hearsay rule when there are circumstances that provide that such declarations are trustworthy and reliable. *Commonwealth v. Bracero,* 515 Pa. 355, 366, 528 A.2d 936, 941 (1987). *See also, Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Commonwealth v. Hackett,* 225 Pa.Super. 22, 307 A.2d 334 (1978); Federal Rule of Evidence 804(b)(3).

In the instant case, the Commonwealth offered Delacerna's statement to Detective Marraway not for its substantive truth,[1] but only to impeach his prior statement to Ms.

1. The Commonwealth has acknowledged in its brief that Delacerna's statement was not admitted pursuant to the holdings in *Commonwealth v. Lively,* 530 Pa. 464, 610 A.2d 7 (1992), and *Commonwealth v. Burgos,* 530 Pa. 473, 610 A.2d 11 (1992). These cases involved the use of prior inconsistent statements as substantive evidence, where such statements were given under oath at a formal legal proceeding, had been reduced to writing and signed by the witness, or were contemporaneous verbatim recordings of the witness' statements.

Vilsack which was included in her testimony at trial. Because it was not being offered for its truth, such a statement is not hearsay, and ordinarily would be admissible, regardless of whether it fell under one of the exceptions to the hearsay rule.[2] Thus, there was no error in admitting the portion of Delacerna's statement where he denied killing the victim; this directly contradicted his statement to Ms. Vilsack and was proper rebuttal.

However, it is that portion of Delacerna's statement to Detective Marraway, which claimed Appellant was responsible for the victim's death, that presents the actual issue in this case. Although the trial court instructed the jury that Detective Marraway's testimony was to be considered only in determining what weight to give Delacerna's statement to Ms. Vilsack, and, although the trial court reminded the jury that Delacerna was not available to testify on behalf of either party, nor was he cross-examined to test his credibility, its admission was in error. The case law of this Commonwealth and the Confrontation Clause of the Sixth Amendment renders this portion of Delacerna's statement inadmissible for any purpose at Appellant's trial.[3]

Pennsylvania case law has held that the use of a co-defendant's statement at trial in which he inculpates the accused is inherently prejudicial to the defendant, and therefore such references to the defendant's guilt must be redacted

2. Because we do not consider Delacerna's statement to Detective Marraway to be hearsay, we need not analyze whether such statement is indeed a statement against penal interest, as the application of such an exception is rendered unnecessary.

3. Even if this portion of Delacerna's statement had been admitted strictly in rebuttal to his prior statement included in Ms. Vilsack's testimony, we would question the relevancy of this portion of the statement. That part of the statement in which Delacerna denies killing the victim is definitely relevant to rebut his prior statement to Ms. Vilsack in which he stated that he *did* kill the victim. However, because Delacerna's statement to Ms. Vilsack contained no reference to Appellant's role in the stabbing, rebuttal is unnecessary, and therefore the latter portion of Delacerna's statement would be irrelevant for any purpose, even if not found to be prejudicial. The Commonwealth has not raised this issue, however, and therefore, we decline to base our holding upon this rationale.

prior to the admission of such a statement at trial. In regard to the practice of redaction, in which all testimonial references in a confession to anyone other than the declarant are omitted, this court has held that "the jury is ... not permitted to consider the non-testifying co-defendant in assessing the defendant's culpability." *Commonwealth v. Young*, 263 Pa.Super. 333, 337, 397 A.2d 1234, 1237 (1979). In sanctioning the use of redaction, our Supreme Court has limited its application to "... confession(s) ... not contain(ing) a trace or hint of participation in the crime by appellant (the confessor's co-defendant) ..." *Commonwealth v. Boykin*, 276 Pa.Super. 56, 61, 419 A.2d 92, 94 (1979), quoting *Commonwealth v. Johnson*, 474 Pa. 410, 414, 378 A.2d 859, 861 (1977). Therefore, the trial court erred in failing to redact the portion of Delacerna's statement which inculpated Appellant. Furthermore, we find that the trial court's error in admitting this portion of Delacerna's statement was not harmless, in light of the Confrontation Clause of the Sixth Amendment to the United States Constitution,[4] thereby requiring a new trial.

The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, *Pointer v. Texas*, 380 U.S. 400, 403–405, 85 S.Ct. 1065, 1067–68, 13 L.Ed.2d 923 (1965), provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The Clause "operates in two separate ways to restrict the range of admissible hearsay." *Commonwealth v. Bujanowski*, 418 Pa.Super.

4. The fact that we have determined that the objectionable portion of Delacerna's statement did not constitute a violation of the hearsay rule has no bearing on whether the admission of that portion of the statement violated the Confrontation Clause. As the United States Supreme Court recognized in *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), the Confrontation Clause and the hearsay rule "stem from the same roots," but the Court has never equated the two. Indeed, the Court has "more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception." *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), citing *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Thus, these two issues demand separate analysis.

163, 175, 613 A.2d 1227, 1233 (1992), quoting *Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980). In *Ohio v. Roberts,* the United States Supreme Court set forth a general approach for determining whether an incriminating statement is admissible under the requirements of the Confrontation Clause:

> First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case ..., the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant.

*Id.,* at 64, 100 S.Ct. at 2538.

Second, once a witness is shown to be unavailable, "the Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general rule.'" *Id.,* at 65, 100 S.Ct. at 2539, quoting *Snyder v. Massachusetts,* 291 U.S. 97, 107, 54 S.Ct. 330, 333, 78 L.Ed. 674 (1934). Thus, in situations where the witness has been shown to be unavailable, the admission of hearsay is limited to situations where the declaration is inherently trustworthy, bearing adequate "indicia of reliability." *Commonwealth v. Kravontka,* 384 Pa.Super. 346, 558 A.2d 865 (1989); *Ohio v. Roberts, supra,* at 66, 100 S.Ct. at 2539.

 In the case *sub judice,* Delacerna chose to invoke his Fifth Amendment privilege not to testify. A witness who invokes his Fifth Amendment privilege is deemed "unavailable" for the purpose of testifying, provided the court first determines that the witness' concern with self-incrimination is legitimate. *Commonwealth v. McGrogan,* 523 Pa. 614, 621, 568 A.2d 924, 928 (1990). Here, Delacerna's concern was legitimate, and therefore, he was unavailable for purposes of the Confrontation Clause.

However, because Appellant had neither the opportunity to confront nor cross-examine Delacerna at the time the statement was made, the "trustworthiness" requirement set forth

by *Ohio v. Roberts, supra,* is not met, and Appellant's Sixth Amendment right has been violated.

Furthermore, under *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the use of an out-of-court statement of a third person implicating the accused at trial has been held to be a violation of the accused's Sixth Amendment right of confrontation.

In *Bruton,* the Court found a violation of confrontation rights in the admission of a co-defendant's confession, implicating Bruton, where the co-defendant did not take the stand at the joint trial of Bruton and his co-defendant. The Court emphasized that the error arose because the declarant "does not testify and cannot be tested by cross examination," *Id.,* at 136, 88 S.Ct. at 1628, and further stated that "[i]t was against such threats to a fair trial that the Confrontation Clause was directed." *Id.* Of special concern to the *Bruton* Court was the effectiveness of limiting instructions given to the jury, whereby they were instructed that the confession of Bruton's co-defendant was admissible only against the co-defendant, and not against Bruton. The Court held that because a confession that incriminates an accomplice is so "inevitably suspect" and "devastating," the ordinarily sound assumption that a jury will be able to follow faithfully its instructions could not be applied. *Lee v. Illinois,* 476 U.S. 530, 542, 106 S.Ct. 2056, 2063, 90 L.Ed.2d 514 (1986), citing *Bruton, supra,* 391 U.S. at 136, 88 S.Ct. at 1628.

In *Lee v. Illinois, supra,* the Supreme Court again examined the propriety of admitting an accomplice's out-of-court confession which implicated the accused, and stated that:

absent a showing of "sufficient 'indicia of reliability' " to overcome the strong presumption against the admission of uncross-examined hearsay, "there is no occasion to depart from the time-honored teaching that a co-defendant's confession inculpating the accused is inherently unreliable, and that convictions supported by such evidence violate the constitutional right of confrontation."

*Commonwealth v. Bujanowski,* 418 Pa.Super. at 176, 613 A.2d at 1234, quoting *Lee, supra,* at 546, 106 S.Ct. at 2065 (footnote omitted).

In the instant case, the problems attendant to the admission of such statements during a joint trial are nonexistent, as Delacerna was severed as a defendant from Appellant's trial. However, the fact remains that Appellant did not have the opportunity to cross-examine Delacerna, whose out-of-court statement which inculpated Appellant was admitted at trial.

As we have stated, the portion of Delacerna's statement to Detective Marraway in which he denied killing the victim was admissible as an inconsistent statement to be considered by the jury in its determination of the weight to be afforded Delacerna's statement to Ms. Vilsack. However, although the Commonwealth did not seek admission of the inculpatory portion of the statement for its substantive evidentiary value, we find the trial court's ruling on the statement's evidentiary purpose to be unclear and potentially misleading to the jury. Although the trial court's jury instruction referred to the fact that Detective Marraway's testimony should be considered when determining the weight to give Delacerna's statement to Ms. Vilsack, we find a conflicting statement in its opinion, in which the court explicitly stated that Delacerna's entire statement to Detective Marraway was admitted for its substantive evidentiary value, and not solely for purposes of rebuttal or impeachment: "... the statement taken from Mr. Delacerna by Detective Marraway became very relevant and *probative of the issue at hand,* that is, who killed the victim." Opinion, Melvin, J., p. 7 (emphasis supplied). Because of the trial court's obvious ambivalence concerning the statement's evidentiary purpose, we cannot assume that the jury clearly understood that the statement was sought to be admitted only for the limited purpose of impeachment. However, no cautionary or limiting instruction can cure the constitutional violation, as the *Bruton* court found that once a co-defendant's statement which inculpates the defendant is admitted, the resulting prejudice to the defendant is so great that it cannot be negated by a curative instruction to the jury.

Therefore, under *Bruton*, the trial court's failure to redact the inculpatory portion of Delacerna's statement constitutes error which can be cured under no circumstances. Because such error is not harmless, a remand for a new trial is necessary.

In light of the foregoing body of case law, it is clear that Appellant's Sixth Amendment right of confrontation has been violated. Furthermore, as a result of this error, a new trial is warranted in which the inculpatory portion of Delacerna's statement is to be redacted, and the jury is to be instructed that the admissible portion of the statement is to be considered solely for its effect in determining the weight of Ms. Vilsack's testimony, and not for its substantive evidentiary value.

█ Because Appellant's claim regarding the sufficiency of the evidence would require a complete discharge if found to have merit, we must address it briefly at this time. In determining the sufficiency of the evidence, this court must consider evidence which was actually received, whether the trial court's rulings thereon were correct or not. *Commonwealth v. Lewis*, 424 Pa.Super. 531, 623 A.2d 355 (1993), citing *Reichman v. Wallach*, 306 Pa.Super. 177, 452 A.2d 501 (1982). When viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence received in the instant case, including the portion of Delacerna's statement which inculpated Appellant, would enable the trier of fact to find every element of voluntary manslaughter proven beyond a reasonable doubt. Accordingly, Appellant's sufficiency claim is meritless. Because we are reversing and remanding for a new trial, we do not reach the other issues raised in this appeal.

Judgment of sentence reversed; case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.