**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Clarence LAUDENBERGER, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 19, 1998.

Filed May 27, 1998.

Howard F. Knisely, Lancaster, for appellant.

Joseph C. Madenspacher, Dist. Atty., Lancaster, for Com., appellee.

Before HUDOCK, STEVENS and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

Clarence Laudenberger (appellant) appeals from his judgment of sentence entered by the Lancaster County Court of Common Pleas. Following a jury trial, appellant was convicted of second-degree murder (felony murder) via accomplice liability and sentenced to life imprisonment. In this appeal, appellant raises a number of issues involving the sufficiency of the evidence, the denial of his pre-trial motions, the trial court's refusal to decertify his case to juvenile court, and the admissibility of two hearsay statements.

Appellant presents the following questions for our review:

I. Whether the evidence presented was sufficient to support a verdict of guilty beyond a reasonalbe (sic) doubt?

II. Whether the trial court erred in denying appellant's omnibus pre-trial and supplemental omnibus pre-trial motions?

III. Whether the trial court erred in denying appellant's motion to decertify his case to the juvenile court?

IV. Whether the trial court erred in denying (sic) defense witness from testifying and co-defendant's statement to be introduced at trial?

Appellant's brief at viii. We have reordered these issues for purposes of our discussion.

## FACTS

At approximately 11:30 p.m. on May 23, 1996, Nicole Wiseman picked up appellant, Aramis Gonzalez, Anthony Lewis, and Rodney Walton in her car. Gonzalez was armed with a pistol. Wiseman drove the group to a private residence, where appellant and Walton dressed themselves in dark clothing and secured "hoodies" (to hide their faces) and gloves. The group then left for the neighboring town of Columbia. When Wiseman realized what other members of the group were wearing, she told them that if anyone left her car they were not getting back in. At this point, appellant decided to abort the trip and asked Wiseman to return to Lancaster. Once there, Wiseman left them at a Uni–Mart convenience store.

After the group decided to rob the store, Lewis entered it to investigate the layout. Lewis determined everything was "cool" and the group commenced the robbery shortly after midnight. During the crime, Gonzalez fatally shot Michael Heath, the Uni–Mart store clerk. After the shooting, the group fled the scene without taking any money. The next day, appellant was arrested and made a statement explaining his involvement in the crime. Although appellant was 17 years old at the time of the incident, he was charged and tried as an adult. While Gonzalez was tried and convicted of first-degree murder separately, appellant was tried along with Lewis and Walton. Appellant was convicted of felony murder and sentenced to life imprisonment. This timely appeal followed.

## DECERTIFICATION AND TRIAL SEVERANCE

 Appellant asserts his case should have been decertified to juvenile court pursuant to 42 Pa.C.S. § 6355. "It is clear from the language of the act that a transfer in a murder case is not a matter of right, and the determination of whether the interests of the state and society require prosecution as an adult is within the sound discretion of the

trial court." *Commonwealth v. Johnson*, 542 Pa. 568, 669 A.2d 315 (1995). A trial court's decision to deny decertification will only be disturbed upon a showing of gross abuse of discretion. *Commonwealth v. Leatherbury*, 390 Pa.Super. 558, 568 A.2d 1313 (1990). After reviewing the record and considering the relevant factors enumerated in 42 Pa.C.S. § 6355(a)(4)(iii), we conclude the trial court did not abuse its discretion by refusing to decertify appellant's case.

■■■■ Appellant also contends that he should have been tried separately from Walton and Lewis. "The decision whether to grant a motion for severance is a matter within the sound discretion of the trial court and should not be disturbed absent a manifest abuse of discretion." *Commonwealth v. Chester*, 526 Pa. 578, 589, 587 A.2d 1367, 1372 (1991). The probability of antagonistic defenses is a factor that the trial court should consider in its decision to grant severance. *See id.* Appellant's only argument in support of severance is that his statement to the police was partially inconsistent with that of a co-defendant's. The contradiction relates to whether appellant was inside or outside the Uni–Mart during the robbery. In light of the Commonwealth's theory of accomplice liability, this contradiction does not rise to the level of antagonism requiring severance. *See id.* Accordingly, appellant's claim regarding severance fails.

### SUPPRESSION OF STATEMENT

■■ Appellant asserts that trial court should have suppressed his statement to the police because an interested adult was not present when he gave it. When reviewing a motion to suppress, we must determine whether the evidence of record supports the factual findings of the trial court. *See In Re Pack*, 420 Pa.Super. 347, 616 A.2d 1006, 1008 (1992). If the evidence supports the court's findings, we may reverse only if the legal conclusions drawn therefrom are in error. *See id.* In light of this standard, we affirm the trial court.

■■ When considering a juvenile *Miranda* waiver, the Pennsylvania Supreme Court has stated,

[t]he requirements of due process are satisfied, and the protection against the use of involuntary confessions which law and reason demand is met by application of the totality of circumstances analysis to all questions involving the waiver of rights and the voluntariness of confessions made by juveniles. All of the attending facts and circumstances must be considered and weighed in determining whether a juvenile's confession was knowingly and freely given. Among those factors are the juvenile's youth, experience, comprehension, and the presence or absence of an interested adult.

*Commonwealth v. Williams*, 504 Pa. 511, 521, 475 A.2d 1283, 1288 (1984). Appellant claims he did not validly waive his Fifth and Sixth Amendment rights because an interested adult was not present during his interrogation. The record belies this claim. During the entire interrogation, appellant's mother was present. The interrogating officer told the mother of the charges against appellant and also thoroughly explained appellant's rights to both appellant and his mother. The officer allowed appellant to have a private consultation with his mother, after which appellant and his mother signed appellant's Miranda waiver.

Despite this procedure, appellant argues that his mother did not qualify as an interested adult because she was angry with appellant, she only met with appellant for a few minutes, and she did not fully appreciate his legal situation. We are unpersuaded. Appellant does not claim his mother misunderstood his rights. Moreover, the fact that appellant's mother was upset with him is as indicative of concern as it is of disinterest. Finally, the length of their meeting weighs as much towards their mutual understanding of appellant's rights as it does against comprehension. In short, we see nothing that suggests appellant's mother was not an interested adult within the meaning of *Williams*. After an independent and thorough review of the record, we find that appellant validly waived his rights in light of the totality of circumstances.

## SUFFICIENCY OF THE EVIDENCE

Appellant claims that the Commonwealth presented insufficient evidence to support his conviction for felony murder.[1] When reviewing such a claim, all evidence adduced at trial must be reviewed in the light most favorable to the Commonwealth. *See Commonwealth v. Jackson*, 506 Pa. 469, 485 A.2d 1102 (1984). We then decide whether the evidence was sufficient to permit the fact finder to determine that each and every element of the crime charged was established beyond a reasonable doubt. *See Commonwealth v. Smith*, 523 Pa. 577, 580, 568 A.2d 600, 602 (1989). Instantly, we find the evidence sufficient to support appellant's conviction.

Appellant asserts he was merely a bystander and not an active member of the robbery attempt, and therefore is innocent of felony murder. The evidence indicates otherwise. On the night of the robbery, appellant was driven to a private residence where he changed into dark clothing and brought "hoodies" and gloves into the car. A witness testified that, after hearing a gunshot, he saw four individuals dressed in dark hooded sweatshirts running out of the Uni–Mart and up an alley. When the witness entered the Uni–Mart immediately after, he found the victim lying on his back in blood, holding a telephone. Appellant admitted to the police that he discussed and planned the robbery with co-defendants for up to a half-hour. Finally, appellant admitted to being a lookout while the robbery occurred. This evidence is sufficient to implicate appellant as an accomplice in the robbery.

Appellant also argues that even if he was guilty of robbery, the evidence was insufficient to show Michael Heath's slaying was in furtherance of the robbery. Appellant relies upon *Commonwealth v. Waters*, 491 Pa. 85, 418 A.2d 312 (1980), which held that an accomplice is not liable for felony murder where a killing occurs during the felony but is not in furtherance of the crime. *Id.* 418 A.2d at 317. Admittedly, whether evidence sufficiently indicates that a killing was in furtherance of a predicate felony can be a difficult question. The facts at present, however, are strikingly similar to those in *Commonwealth v. Olds*, 322 Pa.Super. 442, 469 A.2d 1072 (1983).

In *Olds*, two men, Roderick Allen and Richard Olds, went to an all-night general store together looking for something to eat. On the way into the store, Allen told Olds, "I'm going to rob the store," to which Olds responded, "Yeah, right." Once in the store, Olds proceeded to the back to get a bag of chips. Allen remained by the door until Olds reached the register, at which time Allen muttered something to Olds and followed another customer out into the parking lot. A witness then saw Allen pointing his gun at the customer who held out his wallet and said, "Here, take my wallet." At this point, Allen shot and killed the customer without taking the wallet. Both Olds and Allen fled the scene.

In light of these facts, the *Olds* Court stated, "the trial record will easily support an inference that the victim was shot, if not in the course of an effort to obtain his wallet, at least in the process of escaping the scene of an attempted robbery. This is undisputedly 'perpetration of a felony' as defined by 18 Pa.C.S. § 2502(d)[.]" *Id.* 469 A.2d at 1077. The evidence of furtherance presented at appellant's trial was at least as strong as the

---

1. Felony murder is defined as:

 **2502. Murder**

\* \* \*

 **(b) Murder of the second degree.** —A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as principal or an accomplice in the perpetration of a felony.

\* \* \*

 **(d) Definitions.**—As used in this section the following words and phrases shall have the meanings given to them in this subsection:

\* \* \*

 "**Perpetration of a felony.**" The act of the defendant in engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery . . .

 18 Pa.C.S. § 2502.

evidence in *Olds*. The evidence in the instant case equally supports the inference that Heath was shot in the process of escaping from the failed robbery. Our determination is therefore controlled by the outcome of *Olds*. Accordingly, the evidence produced at trial was sufficient to support appellant's felony murder conviction.

## HEARSAY CLAIMS

Appellant claims that the trial court committed error by refusing to admit a statement made by Gonzalez into evidence. We note that the admissibility of evidence is within the sole discretion of the trial court and will be reversed only upon a showing that the court abused its discretion. *See Commonwealth v. Claypool*, 508 Pa. 198, 202, 495 A.2d 176, 178 (1985) (citation omitted). "[A]n abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied ... discretion is abused." *Commonwealth v. Davis*, 381 Pa.Super. 483, 554 A.2d 104, 108 (1989) (citations omitted).

In his offer of proof at trial, appellant contended that the statement articulates a number of reasons for Gonzalez's murder of Mr. Heath that exculpate appellant. Specifically, appellant argued that the statement reveals Gonzalez went to the Uni-Mart with the predetermined purpose of committing murder unrelated to the robbery. Although clearly hearsay, appellant maintained that the statement qualified for the declaration against penal interest exception. The Commonwealth responded that one of the five reasons Gonzalez gave for the killing was that Mr. Heath did not give him the store money. As this was consistent with their theory of the case, the Commonwealth argued Gonzalez inculpated appellant, rendering the statement against penal interest exception inapplicable. The court ruled in favor of the Commonwealth and excluded the statement as impermissible hearsay. This ruling was error.

The declaration against penal interest exception was first recognized in this Commonwealth by our decision in *Commonwealth v.*

*Hackett*, 225 Pa.Super. 22, 307 A.2d 334 (1973). In *Hackett* we stated,

> Public policy, the fundamental principles of fairness and the due process of law require the admission of declarations against penal interest where it can be determined that those statements: (1) exculpate the defendant from the crime for which he is charged; (2) are inherently trustworthy in that they are written or orally made to reliable persons of authority or those having adverse interest to the declarant; and that they are made pre-trial or during the trial itself. Under these circumstance, an exception to the hearsay rule, in our view, is mandatory. The protection of innocent defendants must override any technical adherence to a policy that excludes evidence on the grounds of hearsay.

*Id.* 307 A.2d at 338. The Commonwealth does not challenge that Gonzalez's statement qualifies as inherently trustworthy, nor could it. The statement was made in a signed confession, and the facts stated subjected Gonzalez to liability for first-degree murder. Rather, the Commonwealth argues that because part of Gonzalez's statement is consistent with the case against appellant, the statement is not exculpatory and is inadmissible under *Hackett's* first prong. We disagree.

Since *Hackett*, our Supreme Court has recognized this hearsay exception on several occasions. *See, e.g., Commonwealth v. Nash*, 457 Pa. 296, 324 A.2d 344 (1974) (plurality opinion, with six justices agreeing the exception exists, but disagreeing as to its scope); *Commonwealth v. Williams*, 537 Pa. 1, 26, 640 A.2d 1251, 1263 n. 8 (1994) (recognizing the declaration against penal interest hearsay exception where circumstances assure trustworthiness and reliability). Our Supreme Court, however, has never directly addressed the requirement that such a declaration be exculpatory to the defendant offering it. Although this dearth of consideration alone may question the requirement's viability, as a decision of this Court we are constrained to follow *Hackett's* rationale.

██ The only case that addresses the exculpatory requirement directly is *Commonwealth v. Robinson*, 298 Pa.Super. 447, 444 A.2d 1260 (1982). In *Robinson*, the Commonwealth argued a co-defendant's statement that incriminated appellant qualified as a declaration against penal interest. We held that the first prong of *Hackett* barred this argument, as it would violate the Confrontation Clause of the Sixth Amendment.[2] *See id.* 444 A.2d at 1263 (citing *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)); *see also Commonwealth v. Ballard*, 430 Pa.Super. 109, 633 A.2d 641 (1993) (inculpatory statement by co-defendant may not be introduced by the Commonwealth even if used solely for impeachment purposes because it cannot be sufficiently reliable to satisfy Confrontation Clause). Although this is a valid limitation on the Commonwealth, in the case *sub judice* defendant is attempting to introduce his co-defendant's statement. Therefore, the Confrontation Clause is not implicated. Moreover, to disallow an otherwise reliable statement because of a blind application of the first requirement of *Hackett* would offend the notions of due process and fundamental fairness upon which the decision was explicitly based. Finally, Gonzalez's statement is not excluded under *Hackett*'s first prong because it contains exculpatory information. *Hackett* does not require *all* of the information to be exculpatory; if the statement contains both inculpatory and exculpatory information, and is offered by defendant, it satisfies *Hackett*'s first prong.

██ Even if the statement satisfies the exception to the hearsay bar, it must also be shown to be relevant before admission is proper. *See Commonwealth v. McCracken*, 373 Pa.Super. 90, 540 A.2d 537 (1988) (a statement against penal interest must inculpate declarant and must be relevant to defendant's case to be admissible), *aff'd per curiam without comment*, 524 Pa. 332, 572 A.2d 2 (1990) (Nix, C.J., dissenting). "Evidence is considered relevant if it logically tends to establish a material fact in the case,

tends to make the fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *Commonwealth v. LaCava*, 542 Pa. 160, 174, 666 A.2d 221, 227–28 (1995) (citation omitted).

██ Gonzalez's statement is relevant to the material fact concerning Gonzalez's purpose in killing Mr. Heath. As noted, in order for an accomplice to be liable for felony murder, the killing must be in furtherance of the underlying felony. *Waters*, 491 Pa. at 94, 418 A.2d at 317. Appellant argues that Gonzalez decided to kill the victim before the robbery began. Hence, the killing was incidental to, rather than in furtherance of, the underlying robbery.

> If, in addition to the recklessness or wanton disregard which is imputed to both co-felons, the actual killer also had a specific intent to kill, and the murder flowed from such specific intent rather than from the recklessness, then according to the Waters interpretation, the killing did not result from the perpetration of the felony, but was merely collateral to it.

*Olds*, 469 A.2d at 1076. Thus, if Gonzalez had a specific intent to kill and his purpose was not to further the underlying robbery, appellant cannot be guilty of felony murder.

██ Because Gonzalez's statement was reliable, exculpatory, and relevant, the trial court erred by not admitting it into evidence. If the error is harmless, however, a new trial is not required. *See Commonwealth v. Thornton*, 494 Pa. 260, 431 A.2d 248 (1981); *Commonwealth v. Davis*, 543 Pa. 628, 674 A.2d 214 (1996). Clearly, if a statement contains both inculpatory and exculpatory information, the inculpatory content may be of such a nature and degree that admission of the statement would not affect the outcome of the trial. Without Gonzalez's statement as part of the record, however, we cannot evaluate its impact at trial. Therefore, we vacate appellant's judgment of sentence and remand the matter to the trial court for an evidentiary hearing to evaluate the contents of Gonzalez's statement and decide whether the trial

---

**2.** The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. Amend. VI.

court's error was harmless. *Cf. Davis*, 674 A.2d at 217. If the error was harmless, the judgment shall be reinstated. Otherwise, a new trial must be granted.

Finally, appellant claims that the trial court improperly excluded the testimony of Amy Potts. In his offer of proof, appellant submitted that Potts would have testified that, approximately three hours after the shooting, Gonzalez made a statement about the incident that exculpated appellant. In order to circumvent the hearsay issue, appellant contends Gonzalez's statement qualifies as an excited utterance. We disagree.

■■■■ In order to qualify as an excited utterance exception to the hearsay rule, a statement must be:

> A spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.

*Commonwealth v. Green*, 487 Pa. 322, 326–27, 409 A.2d 371, 373 (1979) (citing *Allen v. Mack*, 345 Pa. 407, 408, 28 A.2d 783, 784 (1942)). Furthermore, "[a]n excited utterance is the event speaking and not the speaker." *Commonwealth v. Zukauskas*, 501 Pa. 500, 503, 462 A.2d 236, 237 (1983). Gonzalez spoke to Potts over three hours after the shooting. It is well within the trial court's discretion to find that Gonzalez was no longer sufficiently excited to satisfy this exception. Accordingly, the court below properly excluded this testimony.

## CONCLUSION

We conclude that appellant's claims concerning trial severance, juvenile decertification, suppression of his statement, and Amy Potts' hearsay testimony are without merit. Further, the evidence adduced at trial was sufficient to support his convictions for felony murder. The trial court's refusal to admit

Gonzalez's statement exculpating appellant was error, however, and we remand for an evidentiary hearing to determine whether such error was harmless.

Judgment of sentence vacated, and case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

Dissenting and Concurring Opinion by STEVENS, J.

STEVENS, Judge, dissenting and concurring:

The majority opinion concludes that the exculpatory requirement of the declaration against penal interest exception to the hearsay rule is no longer vital, and, therefore, the majority concludes that the trial court erred in excluding certain hearsay statements on this basis. I respectfully disagree with the majority's analysis as to those portions of the statement which are not exculpatory, but I agree with the majority's analysis as to those portions which are exculpatory.

In *Commonwealth v. Hackett*, 225 Pa.Super. 22, 307 A.2d 334 (1973), our Court stated that declarations against penal interest are not admissible unless (1) they exculpate the defendant from the crime for which he is charged and (2) they are inherently trustworthy. In the within matter, at issue is whether certain portions of Appellant's co-defendant's statement are admissible since they did not exculpate Appellant. The majority questions the continued vitality of the exculpatory requirement, alleging that "the only case to address the exculpatory requirement [since *Hackett, supra* ] is *Commonwealth v. Robinson*, 298 Pa.Super. 447, 444 A.2d 1260 (1982)." I disagree.

In *Commonwealth v. Presbury*, 445 Pa.Super. 362, 665 A.2d 825 (1995), a panel of this Court expressly followed the dictates of *Hackett, supra*, and concluded that Appellant was required to show that the statement he wished to introduced under the penal interest exception exculpated him. Since a necessary transcript was not provided to the panel, the panel was unable to review Appellant's claim under the mandates of *Hackett, supra*. However, there is no doubt that the panel concluded that fulfillment of the exculpatory

prong was a necessary prerequisite to the introduction of the statement.

Not only does the exculpatory requirement remain vital; it is an important prerequisite to the introduction of out-of-court statements introduced under the declaration against penal interest exception. Those statements which do not exculpate a defendant are irrelevant, i.e., they do not tend to make it more likely than not that the defendant did not commit the crime. *See Commonwealth v. Pompey*, 248 Pa.Super. 410, 375 A.2d 163 (1977). Further, contrary to the majority's assertion, those portions of a statement which do not contain exculpatory information must be excluded. Accordingly, I would affirm the trial court with regard to those portions of the statement which are not exculpatory, but I would remand for a hearing with regard to those portions of the statement which are exculpatory.